## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MICHAEL PENNINGTON**                    **CIVIL ACTION**

**VERSUS**                                            **NO.  16-12799**

**DARRELL VANNOY, WARDEN**            **SECTION "J"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Michael Pennington, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On November 9, 2007, Pennington and two co-

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 1.

defendants, Lionel Richardson and Cedric D. Richardson, were indicted by a Tangipahoa

Parish grand jury for the first degree murder of Byron Williams.[3]  After the case was

severed for separate proceedings against the two defendants, the charge against

Pennington was reduced to second degree murder.[4]  The Louisiana First Circuit Court of

Appeal summarized the facts determined at trial as follows:

> On August 18, 2007 at about 10 p.m., the defendant, Cedric Richardson, and Lionel Richardson, Jr. went to the home of Byron Williams to rob him. Byron lived alone on Old Baton Rouge Highway in Tangipahoa Parish. Cedric, the uncle of Lionel, and the defendant (who were cousins) knew Byron, so Byron invited all three men into his home.
>
> They all sat down to watch a movie.  Lionel went to the bathroom and when he came out, he produced a crowbar which he had retrieved from his 1993 black Thunderbird.  Lionel struck Byron in the head with the crowbar. Cedric and the defendant grabbed Byron and held him down while Cedric bound Byron's hands and feet with tie-straps.  Lionel continued to strike Byron with the crowbar to quiet him.  Finally, Lionel grabbed a shirt and tied it around Byron's neck.  He also used the shirt to gag Byron.  Lionel then retrieved a knife and stabbed Byron in the shoulder.  Byron was dragged to a bedroom and placed underneath the bed.  Because the bottom of the bed was low to the ground, Cedric and the defendant lifted the bed while Lionel moved Byron underneath the bed.  Cedric and the defendant then lay the bed on top of Byron.
>
> Cedric then left the house and went to a gas station while Lionel and the defendant remained at the house.  Cedric returned with several plastic gallon-containers filled with gasoline.  All three men poured gasoline around the inside of the house.  Someone lit a fire in the bedroom Byron was in and the three men left the house.  Byron was still alive when the fire was started. Lionel and the defendant drove away in Lionel's Thunderbird.  Cedric took keys from in the house and drove away in Byron's 2005 Ford Super Crew

---

[3]St. Rec. Vol. 1 of 11, Indictment, 11/9/07.

[4]St. Rec. Vol. 1 of 11, Indictment, 11/9/07 (handwritten amendment 9/24/10); St. Rec. Vol. 3 of 11, Trial Court Order, 2/23/09; Motion for Severance, 2/9/09.

pickup truck. Cedric took $1,500 from Byron's house and several of Byron's credit cards. The defendant was given $200 of that money.

The fire department arrived at Byron's house and quickly extinguished the fire which had not yet spread throughout the house. Only a small fire was burning near the bedroom wall when it was extinguished. The autopsy report on Byron noted he had blunt and sharp-force injuries to the head and neck, but the cause of death was lethal carbon monoxide poisoning.

The next day, August 19, the three men went to Sears and GameStop at Cortana Mall in Baton Rouge and purchased several items, including a Sony PlayStation with Byron's credit cards. That same day, Byron's truck was set on fire behind a pawn shop on Florida Boulevard in Baton Rouge. An eyewitness saw a man walk away from the burning truck and get into a black Thunderbird. The eyewitness got the license plate number for the Thunderbird and contacted the police. Through this information, the police learned that Lionel owned the Thunderbird and where he lived. When the police arrived at Lionel's residence, he was not there but the Thunderbird was and it was impounded.

Lionel and Cedric had absconded to Mexico. The defendant stayed in Hammond. Through video footage at Sears, the defendant was identified, then located and detained. He was taken to the Hammond substation for questioning by Sergeant Gary Baham and Detective Raymond Lentz, both with the Tangipahoa Parish Sheriff's Office. The defendant confessed to his participation in the attack on Byron and identified Cedric and Lionel as participants in the attack. Cedric and Lionel were later arrested in Mexico and extradited. Sergeant Baham took custody of them in Brownsville, Texas.

State v. Pennington, No. 2012-KA-0804, 2013 WL 596151, at *1-*2 (La. App. 1st Cir.

2013); State Record Volume 11 of 11, Louisiana First Circuit Opinion, 2012-KA-0804,

pages 2-4, February 15, 2013.

Pennington was tried before a jury on January 31 and February 1 through 3, 2012,

and found guilty of second degree murder.[5]  At a hearing on February 15, 2012, the state

---

[5]St. Rec. Vol. 1 of 11, Trial Minutes, 1/31/12; Trial Minutes, 2/1/12; Trial Minutes, 2/2/12; Trial Minutes, 2/3/12; St. Rec. Vol. 4 of 11, Jury Verdict, 2/3/12; St. Rec. Vol. 7 of 11, Trial Transcript, 1/31/12; St. Rec. Vol. 8 of 11, Trial Transcript, 2/1/12; St. Rec. Vol. 9 of 11, Trial Transcript, 2/2/12; St. Rec. Vol. 10 of 11, Trial Transcript, 2/3/12.

trial court denied Pennington's motion for a new trial.[6]  The state trial court thereafter sentenced him to serve life in prison without benefit of parole, probation or suspension of sentence.[7]

On direct appeal to the Louisiana First Circuit, Pennington's appointed counsel asserted two errors:[8] (1) The state trial court erred by denying the defense's motion to suppress the statements. (2) Admission of Pennington's statements at trial was not harmless error.  Pennington apparently filed a pro se supplemental brief asserting that the state trial court erred in denying the defense motion for mistrial when a prospective juror mentioned other crimes or bad acts during voir dire.[9]

The Louisiana First Circuit affirmed the conviction and sentence on February 15, 2013, finding the claims meritless.[10]  The court held that Pennington's statement was admissible because it was made after a voluntary and knowing waiver of his rights.  The

---

[6]St. Rec. Vol. 1 of 11, Sentencing Minutes, 2/15/12; St. Rec. Vol. 4 of 11, Motion for New Trial, 2/10/12; Notice of Ruling, 2/16/12; St. Rec. Vol. 10 of 11, Sentencing Transcript, 2/15/12.

[7]St. Rec. Vol. 1 of 11, Sentencing Minutes, 2/15/12; St. Rec. Vol. 10 of 11, Sentencing Transcript, 2/15/12

[8]St. Rec. Vol. 11 of 11, Appeal Brief, 2012-KA-0804, dated 9/13/12.

[9]Pennington, 2013 WL 596151, at *6; St. Rec. Vol. 11 of 11, 1st Cir. Opinion, 2012-KA-0804, p. 10, 2/15/13.  The state court record provided by the State does not contain a copy of the supplemental brief referenced in the Louisiana First Circuit's opinion.

[10]Pennington, 2013 WL 596151, at *1; St. Rec. Vol. 11 of 11, 1st Cir. Opinion, 2012-KA-0804, 2/15/13.

court also found that there was no reason for a mistrial.  On March 15, 2013, the court denied a request for rehearing filed by Pennington's counsel.[11]

The Louisiana Supreme Court denied Pennington's related writ application on November 1, 2013, without stated reasons.[12]  His conviction became final ninety (90) days later on January 30, 2014, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filling for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On October 22, 2014, Pennington signed and submitted to the state trial court an application for post-conviction relief in which he asserted three grounds for relief:[13] (1) His federal and state constitutional rights were violated when he proceeded to trial without a ruling from the Louisiana First Circuit on the writ application seeking review of the state trial court's denial of the motion to suppress his statement. (2) His counsel was ineffective when he failed to object to the trial proceeding without a ruling from the

---

[11]St. Rec. Vol. 11 of 11, 1st Cir. Order, 2012-KA-0804, 3/15/13; Application for Rehearing, 2012-KA-0804, dated 3/1/13.

[12]State v. Pennington, 125 So.3d 420 (La. 2013); St. Rec. Vol. 11 of 11, La. S. Ct. Order, 2013-K-0838, 11/1/13; La. S. Ct. Letter, 2013-K-838, 4/16/13.  The record provided does not contain a copy of this writ application.

[13]St. Rec. Vol. 11 of 11, Application for Post-Conviction Relief, 10/27/14 (cover letter dated 10/22/14).

5

appellate court. (3) He was denied due process and equal protection because the state trial court failed to rule on his motion to quash.  The state trial court denied relief on November 20, 2014, finding the claims meritless.[14]

On April 20, 2015, the Louisiana First Circuit denied Pennington's related writ application without stated reasons.[15]  The Louisiana Supreme Court denied Pennington's subsequent writ application on April 8, 2016, for lack of proof and under Strickland v. Washington, 466 U.S. 668 (1984), adopting by reference the state trial court's reasoning.[16]

## II.     FEDERAL HABEAS PETITION

On July 12, 2016, the clerk of this court filed Pennington's petition for federal habeas corpus relief in which he asserted the following grounds for relief:[17] (1) The state trial court erred or abused its discretion by denying the motion to suppress his statement. (2) His constitutional rights were violated when he went to trial without a ruling from the Louisiana First Circuit on his writ application seeking review of the state trial court's denial of the motion to suppress his statement. (3) His counsel was ineffective when he

---

[14]St. Rec. Vol. 11 of 11, Reasons for Judgment, 11/20/14; Trial Court Order, 11/20/14.

[15]St. Rec. Vol. 11 of 11, 1st Cir. Order, 2015-KW-0220, 4/20/15.  The record does not contain a copy of this writ application.

[16]State ex rel. Pennington v. State, 189 So.3d 374 (La. 2016); St. Rec. Vol. 11 of 11, La. S. Ct. Order, 2015-KH-1031, 4/8/16; La. S. Ct. Writ Application, 15-KH-1031, dated 5/18/15.

[17]Rec. Doc. No. 1.

failed to object to the trial starting without a ruling from the appellate court. (4) He was denied due process and equal protection because the state trial court failed to rule on his motion to quash.

The State filed a response in opposition to Pennington's petition conceding that it was timely filed and that state court review of his claims was properly exhausted.[18] The State argues that Pennington's claims are meritless, and he is not entitled to federal habeas relief.

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[19] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Pennington's petition, which, for reasons discussed below, is deemed filed in a federal court on July 12, 2016.[20]  The threshold questions in habeas review under the

---

[18]Rec. Doc. No. 10.

[19]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[20]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for

amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and I find that Pennington's petition was timely, state court review of the claims was exhausted and none are in procedural default.

IV.    STANDARDS OF A MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and

---

delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The official stamp from the prison's Legal Programs Department reflects that Pennington delivered the petition and accompanying documents to prison officials on July 12, 2016, the same day the documents were emailed to the clerk of court for filing. Rec. Doc. No. 2, p. 1.

the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S. 782, 792-93 (2001);  Hill, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted)  White v. Woodall, 134 S. Ct. 1697, 1706-07 (2014)

9

(citing <u>Harrington v. Richter</u>, 562 U.S. 86, 103 (2011)), and <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" <u>White</u>, 134 S. Ct. at 1706 (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" <u>Price v. Vincent</u>, 538 U.S. 634, 641 (2003) (quoting <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)) (brackets in original); <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002), <u>cert. denied</u>, <u>sub nom</u>, <u>Neal v. Epps</u>, 537 U.S. 1104 (2003).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24-25); <u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

V.    <u>DENIAL OF THE MOTION TO SUPPRESS (CLAIMS NO. 1 & 2)</u>

Pennington alleges that the state trial court erred or abused its discretion by denying the motion to suppress his statement to police because the advice of rights form was misleading and resulted in involuntary waiver of his rights.  He also asserts that his

constitutional rights were violated when the trial court proceeded to trial without waiting for a ruling from the Louisiana First Circuit on his writ application seeking review of the denial of the motion to suppress the statement.

Pennington's appointed counsel challenged denial of the motion to suppress on direct appeal. The Louisiana First Circuit held that the language in the waiver of rights form was not a mandated waiver, and that it was clear and unambiguous, including its explanation of the right to counsel and the opportunity to either give a statement or remain silent. The court concluded that it was not error for the state trial court to deny the motion to suppress or admit the statement at trial.

On post-conviction review, Pennington asserted that it was error for the matter to proceed to trial without awaiting a ruling from the Louisiana First Circuit on the state trial court's denial of the motion to suppress. The state trial court denied relief finding that Pennington had not demonstrated that a delay in the trial would have altered the outcome. This reasoning later was adopted by reference by the Louisiana Supreme Court in its denial of Pennington's related writ application.

The admissibility of a confession is a mixed question of law and fact. Miller v. Fenton, 474 U.S. 104, 112 (1985); ShisInday v. Quarterman, 511 F.3d 514, 522 (5th Cir. 2007) (citing Miller, 474 U.S. at 112). A federal court on habeas review must respect the state court's determination of voluntariness as long as it was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court." 28 U .S.C. § 2254(d)(1); <u>Barnes v. Johnson</u>, 160 F.3d 218, 222 (5th Cir. 1998). In doing so, a federal habeas court must afford a presumption of correctness to state courts' findings of fact, if they are fairly supported by the record. <u>Miller</u>, 474 U.S. at 117. Similarly, the habeas corpus statute obliges federal judges to respect credibility determinations made by the state court trier of fact. <u>Pemberton v. Collins</u>, 991 F.2d 1218, 1225 (5th Cir.1993) (citing <u>Sumner v. Mata</u>, 455 U.S. 591, 597 (1982)).

Under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), a statement made by a person in custody is inadmissible unless that person was informed that he has the right to have an attorney present during questioning, that he has the right to remain silent, and that anything that he says may be used against him. <u>Id</u>., 384 U.S. at 444-45. These rights may be waived so long as the waiver is knowing and voluntary. <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986). Two inquiries determine whether an accused has voluntarily and knowingly waived his Fifth Amendment privilege against self-incrimination. <u>Moran</u>, 475 U.S. at 421; <u>Soffar v. Cockrell</u>, 300 F.3d 588, 592 (5th Cir. 2002). First, waiver of the right must be voluntary and not the product of intimidation, coercion or deception. <u>Moran</u>, 475 U.S. at 421. Second, the waiver or relinquishment must be made with full awareness of the nature of the right being waived. <u>Id</u>. The Supreme Court does not require that any precise language be continued in the written waiver forms used by police officials, as long as the warnings "were sufficiently comprehensive and comprehensible when given a commonsense reading." <u>Florida v. Powell</u>, 559 U.S. 50, 63 (2010). The

12

court must consider the "totality of all the surrounding circumstances - both the characteristics of the accused and the details of the interrogation." Schneckloth v. Bustamonte, 412 U.S. 218, 224 (1973).

In this case, in accordance with Jackson v. Denno, 378 U.S. 368 (1964), the state trial court viewed the video recordings of Pennington's two-part statement and conducted a full evidentiary hearing on the admissibility of the inculpatory statement based on the motions to suppress filed by Pennington's counsel.[21]  The court received testimony from the investigating officers, including the interviewers Sergeant Gary Baham and Detective Ray Lentz, and other evidence, including the waiver of rights form signed by Pennington and transcripts of the statement.  The trial court denied the motion without stated reasons at a hearing on December 15, 2010.[22]

Although he sought leave to do so, Pennington's counsel did not seek pretrial review of the state trial court's denial of the motion to suppress in the Louisiana First Circuit.  Counsel conceded this fact on the record at a hearing on April 13, 2011.[23]  The

---

[21]St. Rec. Vol. 10 of 11, Hearing Transcript, 12/15/10; St. Rec. Vol. 6 of 11, Hearing Transcript, 9/24/10; Hearing Transcript, pp. 21-25, 3/23/10; Hearing Transcript, pp. 10-12, 4/21/10; St. Rec. Vol. 1 of 11, Motion to Suppress, 11/9/07; St. Rec. Vol. 3 of 11, Motion to Suppress, 2/20/09; Motion to Suppress, 3/23/09.

[22]St. Rec. Vol. 10 of 11, Hearing Transcript, 12/15/10.

[23]St. Rec. Vol. 7 of 11, Hearing Transcript, p. 2, 4/13/11.

records of the Louisiana First Circuit confirm that no writ application was filed at that time.[24]

When the trial court ruling was addressed on direct appeal, the Louisiana First Circuit held that the language in the waiver of rights form signed by Pennington clearly and unambiguously set forth the required rights under Miranda. The court reviewed each paragraph of the form for clarity in light of Miranda. The court determined based on the video recording that Sergeant Baham provided Pennington a copy of the waiver form to read along with him as each right was addressed. The court held that Pennington's rights were fully explained to him, and Pennington gave no indication that he lacked understanding of the form, his rights or the waiver of those rights, which was consistent with the holdings in Berghuis v. Thompkins, 560 U.S. 370, 387-88 (2010) and North Carolina v. Butler, 441 U.S. 369, 373 (1979). For these reasons, the court denied relief, citing numerous Supreme Court decisions.[25]

Pennington has not challenged the factual conclusions reached by the Louisiana First Circuit as to the details and circumstances of the advice of rights by Sergeant Baham, including the review and reading of the rights form before he signed it. He also does not assert that he did not understand his rights or that he was waiving those rights.

---

[24]Rec. Doc. No. 10.

[25]Pennington, 2013 WL 596151, at *2-*5; St. Rec. Vol. 11 of 11, 1st Cir. Opinion, 2012-KA-0804, pp. 5-10, 2/15/13.

Instead, he argues only that the language of the form implied that he was waiving the rights before he actually signed it or waived his rights.

The transcript of the interview reflects that Sergeant Baham read Pennington the required warnings pursuant to <u>Miranda</u>, including the right to counsel and to remain silent, and explained to him that he could request counsel before or at anytime during questioning. Sergeant Baham expressed the following:

> OK, uh, you knowingly and purposely waive your right to the presence of a lawyer while you are being questioned, you may understand that any time you may exercise your right for a lawyer and all questions will be stopped, you will not be denied your right to a lawyer, your signature below is not admission of guilt only that you have been advised of this form of you rights.[26]

Pennington was asked if he understood this explanation, the other portions of the form and the discussions of his rights to counsel and to remain silent. As the state courts found, the transcript contains <u>no</u> indication that Pennington did not understand. As contemplated by the Supreme Court, the recitation of Pennington's rights was clear and unambiguous and his waiver of those rights by his actions was voluntary and knowing under the applicable standards of law.

In addition, there is no factual support for Pennington's contention that the trial should not have gone forward without waiting for a ruling from the appellate court on the trial court's denial of the motion to suppress. His counsel did not file a writ application

---

[26]St. Rec. Vol. 1 of 11, Statement-Tapes 1&2, pp. 2-3, 8/21/07.

for review of that ruling. Pennington therefore has failed to establish that any constitutional right was violated when the matter proceeded to trial as it did.

For the foregoing reasons, the denial of the motion to suppress, denial of relief on appeal and the admission of the inculpatory statement at trial were not contrary to or an unreasonable application of applicable Supreme Court law. Pennington is not entitled to relief on these claims.

## VI.    EFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NO. 3)

Pennington asserts that his trial counsel was ineffective when he failed to object to the matter proceeding to trial before there was a ruling from the state appellate court on the denial of the motion to suppress his statements. The state trial court denied relief on this issue on post-conviction review. The court held that, in light of the Louisiana First Circuit's holding on direct appeal, that the denial of the motion to suppress and admission of the statement was appropriate and that Pennington had not established that delaying the trial would have a different outcome. The Louisiana Supreme Court denied relief under Strickland v. Washington, 466 U.S. 668 (1984), and adopted these reasons on its later review of the claim.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland, relied on by the state courts, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice.

Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington v. Richter, 562 U.S. 86, 112 (2011) (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105. The Harrington Court

17

went on to recognize the high level of deference owed to a state court's findings under

Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential."

Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (quoting Knowles v. Mirzayance, 556

U.S. 111, 123 (2009)). This court must therefore apply the "strong presumption" that

counsel's strategy and defense tactics fall "within the wide range of reasonable

professional assistance." Strickland, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable

unless clearly proven otherwise by the petitioner. Id., 466 U.S. at 689; Geiger v. Cain,

540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999).

In assessing counsel's performance, a federal habeas court must make every effort to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time

of trial. Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d 230, 236-37 (5th Cir.

2002); Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 772 F.2d 358, 369 (5th Cir. 2014). Thus, under the AEDPA, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

As discussed above, there is no factual support for Pennington's assertion that a writ application was pending when his trial commenced. Pennington's counsel did not file a writ application in the Louisiana First Circuit for pretrial review of the trial court's denial of the motion to suppress.[27] His counsel had nothing to wait for and no reason to object to trial proceeding when it began.

Pennington has not asserted in the state courts or in this federal court that it was error for his counsel not to file a pretrial writ application. Nevertheless, any such claim

---

[27]St. Rec. Vol. 7 of 11, Hearing Transcript, p. 2, 4/13/11.

would be meritless.[28]   As discussed above, Pennington received all required constitutional warnings and notice of his rights before his waiver of those rights and his inculpatory statement to police.  He has not established that denial of the motion to suppress or the admission of his statement was unconstitutional or violated his constitutional rights in any manner that would have kept the statement out of his trial. For this reason, counsel was not ineffective in failing to seek meritless review in the state appellate court before trial.  Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections.").

The denial of relief on this issue was not contrary to or an unreasonable application of Strickland.  Pennington is not entitled to relief on this claim.

VII.   RULING ON MOTION TO QUASH (CLAIM NO. 4)

Pennington claims that he was denied due process and equal protection because the state trial court failed to rule on his motion to quash, which had been postponed until after trial ended.  The state courts denied relief on this claim on post-conviction review, finding that various motions to quash had been addressed before trial and otherwise were rendered moot by the amendment to the indictment.

---

[28]A federal habeas court may deny relief on an unexhausted claim that is meritless. 28 U.S.C. § 2254(b)(2).

Claims of denial of due process and equal protection under habeas law present mixed questions of law and fact. See Wilkerson v. Cain, 233 F.3d 886, 890 (5th Cir. 2000); Woodfox, 772 F.2d at 369. Thus, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of federal law.

The record contains four motions to quash filed by Pennington's counsel well before trial: motion to quash based on the use of a short form indictment;[29] motion to quash based on discrimination in the grand jury composition;[30] motion to quash based on discrimination in the grand jury foreperson selection;[31] and motion to quash the indictment seeking the death penalty with an unconstitutional execution method.[32] The state trial court denied the motion to quash based on the short form indictment at a May 1, 2008, hearing.[33] The court denied the two motions to quash based on grand jury discrimination during the April 21, 2010, hearing.[34] At a hearing on March 23, 2010, the state trial court denied as premature the last motion to quash based on the death penalty execution method.[35] The court discussed with counsel that the motion could be re-urged

---

[29]St. Rec. Vol. 1 of 11, Motion to Quash (short form), 1/15/08.

[30]Id., Motion to Quash (grand jury composition), 1/15/08.

[31]Id., Motion to Quash (grand jury foreperson), 1/15/08.

[32]St. Rec. Vol. 3 of 11, Motion to Quash (death penalty), 8/11/08.

[33]St. Rec. Vol. 5 of 11, Hearing Transcript, p. 25, 5/1/08.

[34]St. Rec. Vol. 6 of 11, Hearing Transcript, pp.2-3, 7-8, 4/21/10.

[35]St. Rec. Vol. 6 of 11, Hearing Transcript, pp. 2-3, 3/23/10.

after trial depending on the outcome of the case, but the motion was <u>denied</u> and not deferred until after trial.

Thus, contrary to Pennington's argument, the state trial court in fact ruled on all four of the motions to quash before trial.  In addition, as noted by the state courts, the motion to quash based on the death penalty execution method was rendered moot by the amendment of the charge on September 24, 2010, to second degree murder, which does <u>not</u> carry the death penalty.  For these reasons, Pennington has not shown that he was denied a constitutional right related to the state trial court's rulings on the motions to quash, especially the motion to quash that was denied as premature.  There simply was no further ruling necessary from the state trial court on the issue of the death penalty, which was no longer relevant to his case.  Without establishing some constitutional error, Pennington has not presented a cognizable federal habeas claim or established that the denial of relief on this issue was contrary to or an unreasonable application of federal law.  He is not entitled to relief on this claim.

## **<u>RECOMMENDATION</u>**

For the foregoing reasons, it is **RECOMMENDED** that Pennington's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[36]

New Orleans, Louisiana, this ____20th____ day of July, 2017.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[36]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.